UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 11-3408(DSD/JSM)

Christine L. Bohnhoff,

       Plaintiff,

v.                                                          **ORDER**

Wells Fargo Bank, N.A.,

       Defendant.


    Christopher P. Parrington, Esq., Andrew A. Dosdall, Esq., Patrick D. Boyle, Esq. and Skjold Parrington, P.A., 222 South Ninth Street, Suite 3220, Minneapolis, MN 55402, counsel for plaintiff.

    Charles F. Webber, Esq., Erin L. Hoffman, Esq. and Faegre Baker Daniels, 90 South Seventh Street, Suite 2200, Minneapolis, MN 55402, counsel for defendant.


This matter is before the court upon the motion to dismiss by defendant Wells Fargo Bank, N.A. (Wells Fargo). Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the motion.


**BACKGROUND**

This mortgage-loan dispute arises out of a promissory note (Note) and mortgage executed in April 2005, by plaintiff Christine L. Bohnhoff for property located at 119 50th Avenue, Princeton, Minnesota 55371. Compl. ¶¶ 4-5. The Note had a principal value of $288,000. See id. ¶ 6. Bohnhoff made monthly mortgage payments of $2000 until September 2009. See id. ¶¶ 7, 14. In late 2009,

Bohnhoff entered into a Trial Payment Plan (TPP) with Wells Fargo under the Home Affordable Modification Program (HAMP). See Compl. Ex. A; App. 1-6, ECF No. 13.

The TPP states that it is "Step One of [a] Two-Step Documentation Process." App. 1-6, ECF No. 13. Bohnhoff agreed that the TPP was "not a modification of the Loan Documents" and that "the Loan Documents would not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed." Id. ¶ 2(G). The TPP indicated trial payments of $1,156.04 from November 2009 through January 2010, id. ¶ 2, but Bohnhoff agreed to continue making monthly payments after January 2010 if she had not yet been approved for a permanent loan modification. See id. ¶ 4(D).

In April 2010, Wells Fargo told Bohnhoff that her net present value (NPV) calculation[1] made her ineligible for a modification. Compl. Ex. A, at 2-3, ECF No. 1-1. Bohnhoff continued making TPP payments until September 2010. Id. ¶ 22. On December 23, 2010, Bohnhoff asked Wells Fargo to reevaluate the status of her modification request. See Compl. Ex. C. In response, Wells Fargo explained that Bohnhoff's loan was still under review. See Compl. Exs. D, E. By October 2011 Bohnhoff had not received a

---

[1] The NPV calculation compares the expected return if a loan were modified with the expected return if not modified.

modification, and Wells Fargo threatened to initiate foreclosure proceedings.

On October 27, 2011, Bohnhoff began this action in state court, claiming breach of contract, breach of mortgagee duty, fraud, negligent misrepresentation, promissory estoppel, unjust enrichment and breach of the Minnesota Residential Mortgage Originator and Servicer Licensing Act (Minnesota Residential Mortgage Act). Bohnhoff also seeks a declaration that she has fully performed her obligations and is entitled to modification of the Note and injunctive relief tolling foreclosure. Wells Fargo timely removed, and moves to dismiss.

## DISCUSSION

### I. Loan Modification

Wells Fargo first argues that Bohnhoff's claims are per se barred because HAMP lacks a private right of action. The United States Department of the Treasury created HAMP in response to a directive in the Emergency Economic Stabilization Act of 2008 (EESA), 12 U.S.C. §§ 5201-5261. HAMP gives financial incentives to encourage mortgage servicers to modify mortgage loans. See Williams v. Geithner, No. 09-1959, 2009 WL 3757380, at *2 (D. Minn. Nov. 9, 2009). As this court has previously noted, there is no

private right of action under HAMP. See McInroy v. BAC Home Loan Servicing, LP, No. 10-4342, 2011 WL 1770947, at *3 (D. Minn. May 9, 2011).

HAMP uses a two-step process for modifications. See U.S. Dep't of Treasury, Supplemental Directive 09-01, Introduction to the Home Affordable Modification Program 14 (2009). Step one involves a trial plan in which a servicer and borrower agree to trial payments. Participating servicers must evaluate several criteria, including a NPV calculation, when considering whether to offer a modification. Williams, 2009 WL 3757380, at *2–3 & 3 n.3. If a borrower meets all HAMP criteria and makes trial payments, step two involves modification of the underlying loan. See Supplemental Directive 09-01, at 14. The Trial Period Plan is "three months in duration (or longer if necessary to comply with applicable contractual obligations)." Id. at 17.

Defendant cites Cox v. Mortgage Electronic Registration Systems, 794 F. Supp. 2d 1060 (D. Minn. 2011), in support of its argument that Bohnhoff's claims are barred by a lack of private remedy under HAMP. Bohnhoff responds that Cox does not stand for the proposition that HAMP creates an absolute shield for lenders under state law. The court agrees. Cox did not consider whether state law claims that implicate HAMP are preempted.[2] Instead, in

---

[2] Preemption is a powerful doctrine that the court does not invoke with a single sentence. As in Cox, the court need not
(continued...)

Cox, the court determined that the lack of a private cause of action reinforces the fact that HAMP, the ESSA and entry into a Trial Period Plan do not create an unconditional entitlement to a loan modification. As a result, each of the state-law claims in Cox failed on the merits.

This case is similar. All of Bohnhoff's claims relate to her belief that she is entitled to modification based on the TPP and Wells Fargo's conduct associated with the request. Accordingly, as in Cox, the court addresses each claim.

## II. Standard of Review

To survive a motion to dismiss for failure to state a claim, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. See Twombly, 550 U.S. at 555. "[L]abels

---

[2](...continued)
address the question of preemption, because each of Bohnhoff's claims fail on the merits.

5

...

...

and conclusions or a formulaic recitation of the elements of a cause of action are not sufficient to state a claim." Iqbal, 129 S. Ct. at 1949 (citation and internal quotation marks omitted).

**III. State Law Claims**

    **A.    Breach of Contract**

A breach of contract claim requires the plaintiff to establish formation of a contract, performance of conditions precedent and a breach. See Thomas B. Olson & Assocs., P.A. v. Leffert, Jay & Polglaze, P.A., 756 N.W.2d 907, 918 (Minn. Ct. App. 2008). Formation of a contract requires "a specific and definite offer, acceptance and consideration." Id. The court judges contract formation based on the objective conduct of the parties. Id.

Bohnhoff argues that the TPP is a contract to modify the Note. Wells Fargo responds that a contract was not formed, because no offer to modify was present. The court agrees. The complaint does not allege facts that would allow the court to infer that Wells Fargo made an offer to modify the Note. In fact, the TPP specifically stated that it was "not a modification of the Loan Documents." App. 1, ¶ 2(G), ECF No. 13. In other words, the TPP is an offer to consider modification, expressly conditioned on continued trial payments (for three months or longer) and other criteria. See Laurent v. Mortg. Elec. Registration Sys., Inc., No.

11-2585, 2011 WL 6888800, at *2 (D. Minn. Dec. 30, 2011); Wittkowski v. PNC Mortg., No. 11-1602, 2011 WL 5838517, at *3-4 (D. Minn. Nov. 18, 2011). As a result, no contract formed.

Further, neither the TPP nor any oral representations[3] qualify as a credit agreement under Minnesota law. Agreements "to lend or forbear repayment of money ... to otherwise extend credit, or to make any other financial accommodation" must be "in writing, express[] consideration, set[] forth the relevant terms and conditions, and [be] signed by the creditor and the debtor." Minn. Stat. § 513.33, subdivs. 1, 2; see Tharaldson v. Ocwen Loan Servicing, LLC, No. 11-1392, 2011 WL 6957555, at *4 (D. Minn. Dec. 15, 2011).

Bohnhoff argues that § 513.33 does not apply, because the TPP "was a modification of an existing credit agreement." Pl.'s Mem. Opp'n. 15. Section 513.33, however, applies to "financial accommodations," and although this term is undefined, the statute includes examples such as "forbearing from exercising remedies under prior credit agreements, or extending installments due under prior credit agreements." Minn. Stat. § 513.33, subdiv. 2. The TPP encompasses both examples, and thus § 513.33 is applicable.

---

[3] Although both parties discuss Minnesota Statutes § 513.33 in their moving papers, the complaint contains no oral promises regarding a loan modification.

Neither the Workout Plan nor any oral representations modified the terms or conditions, such as monthly-payment amounts or interest rates, of Bohnhoff's original Note. Therefore, no new contract formed and dismissal of this claim is warranted.[4]

**B. Breach of Mortgagee Duty**

Bohnhoff next alleges breach of mortgagee duty under Minnesota Statutes § 580.11. This statute relates to foreclosure by advertisement and states that "the mortgagee, the mortgagee's assignee, or the legal representative of either or both, may fairly and in good faith purchase the premises so advertised, or any part thereof, at such sale." Minn. Stat. § 580.11. The statute imposes no fiduciary duty on the mortgagee and does not concern a mortgagee's actions prior to foreclosure. See Scott v. Wells Fargo Bank, N.A., No. 10-3368, 2011 WL 381766, at *4 (D. Minn. Feb. 2, 2011). Since no foreclosure sale occured, this claim fails. See Compl. ¶ 37, see also Laurent, 2011 WL 6888800, at *5-6 (explaining

---

[4] Because Bohnhoff's breach of contract claim is barred by Minnesota Statutes § 513.33, the court need not address whether equitable estoppel and the doctrine of part performance preclude application of the statute of frauds. The court notes, however, that both claims nevertheless fail.

As to equitable estoppel, neither concealment of a material fact nor detrimental reliance can be shown. See Lunning v. Land O'Lakes, 303 N.W.2d 452, 457 (Minn. 1980). Further, part performance is inapplicable, because detrimental reliance cannot be shown. See Burke v. Fine, 51 N.W.2d 818, 820 (Minn. 1952).

The court also notes that even if a viable contract had formed, Bohnhoff failed to meet a condition precedent, because she stopped monthly payments.

8

foreclosure as prerequisite to § 580.11 claim). Therefore, dismissal is warranted.

### C. Fraud

A plaintiff must plead fraud with particularity. See Fed. R. Civ. P. 9(b). To satisfy the heightened pleading requirement, a plaintiff must set forth the "who, what, when, where, and how" of an alleged fraud. United States ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 556 (8th Cir. 2006). In other words, a plaintiff must plead "the time, place and contents" of the false representations, the identity of the individual who made the representations and what was obtained thereby. BJC Health Sys. v. Colom. Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007).

Under Minnesota law, a plaintiff establishes a claim for fraudulent misrepresentation by establishing that:

> (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffer pecuniary damage as a result of the reliance.

Specialized Tours, Inc. v. Hagen, 392 N.W.2d 520, 532 (Minn. 1986) (citations omitted).

The fraud claim is based on two alleged misrepresentations: 1) that Bohnhoff would receive a permanent modification if she complied with the terms of the TPP and 2) that Wells Fargo told Bohnhoff she needed to default on her Note payments prior to being eligible for a HAMP modification. As an initial matter, these bare assertions do not satisfy the Rule 8 pleading standard, much less the heightened pleading standard imposed under Rule 9.

As to the TPP, Bohnhoff is unable to establish a false representation. The TPP stated that it was "not a modification of the Loan Documents." App. 1, ¶ 2(G), ECF No. 13; see Laurent, 2011 WL 6888800, at *4 (holding that trial period plan did not create a false representation). Thus, it is impossible for Bohnhoff to show that the TPP established facts that "were made with knowledge of the falsity of the representation [or] that the false statements caused damages." See Cox, 794 F. Supp. 2d at 1066.

The alleged oral representation that Bohnhoff could not qualify for a loan modification unless she was in default also fails. Bohnhoff cannot show detrimental reliance, because she did not allege that she could have made payments if not for Wells Fargo's alleged misrepresentation. In fact she stopped making payments on her own accord. Compl. ¶ 22. Moreover, Bohnhoff fails to specify when and who made the allegedly false representation. See Ming'ate v. Bank of Am., N.A., No. 11-1787, 2011 WL 4590431, at

*4 (D. Minn. Sept. 30, 2011). Therefore, the fraud claim fails and dismissal is warranted.

**D.  Negligent Misrepresentation**

A person makes a negligent misrepresentation when "(1) in the course of ... a transaction in which he or she has a pecuniary interest, (2) the person supplies false information for the guidance of others in their business transactions, (3) another justifiably relies on the information, and (4) the person making the representation has failed to exercise reasonable care in obtaining or communicating the information." Valspar Refinish, Inc. v. Gaylord's, Inc., 764 N.W.2d 359, 369 (Minn. 2009) (citation omitted).

The basis for the negligent misrepresentation claim is the same as the fraud claim: Wells Fargo provided false information about the modification. As with the fraud claim, the negligent misrepresentation claim fails under Rules 8 and 9. See Trooien v. Mansour, 608 F.3d 1020, 1028 (8th Cir. 2010). Moreover, Wells Fargo told Bohnhoff several times that the modification was not complete and that she needed to continue making trial payments. See Compl. Exs. D, E. There is no evidence that the information was false or that Wells Fargo failed to exercise reasonable care in providing the information. Additionally, Bohnhoff fails to plead facts demonstrating reliance on either the TPP or alleged oral representations. "The bare assertion that plaintiffs reasonably

11

relied on the information is not sufficient to survive a motion to dismiss." Cox, 794 F. Supp. 2d at 1067. Therefore, dismissal of the negligent misrepresentation claim is warranted.

**E.  Promissory Estoppel**

Promissory estoppel is "an equitable doctrine that implies a contract in law when none exists in fact." Martens v. Minn. Mining & Mfg. Co., 616 N.W.2d 732, 746 (Minn. 2000) (citation and internal quotation marks omitted). To state a claim under promissory estoppel, a plaintiff must prove that "(1) a clear and definite promise was made, (2) the promisor intended to induce reliance and the promisee in fact relied to his or her detriment, and (3) the promise must be enforced to prevent injustice." Id.

Bohnhoff argues that the TPP is a promise to provide a permanent loan modification.[5] As already explained, the TPP was not a promise. Moreover, Bohnhoff pleaded no facts that support a finding of detrimental reliance; instead, she had a legal duty to make payments on the Note. Further, Bohnhoff does not show that enforcing the alleged promises is necessary to prevent injustice. Wells Fargo was entitled to receive payments under the Note, and once Bohnhoff ceased making payments, Wells Fargo was entitled to foreclose the mortgage and sell the home. See Brisbin v. Aurora Loan Servs., LLC, No. 10-2130, 2011 WL 1641979, at *4 (D. Minn. May

---

[5] Bohnhoff does not allege a claim for promissory estoppel based on any oral representations. See Compl. ¶¶ 70-75.

12

2, 2011). Therefore, dismissal of the promissory estoppel claim is warranted.[6]

### F. Unjust Enrichment

To show unjust enrichment, a plaintiff must show that "another party knowingly received something of value to which he was not entitled, and that the circumstances are such that it would be unjust for that person to retain the benefit." Schumacher v. Schumacher, 627 N.W.2d 725, 729 (Minn. Ct. App. 2001). Wells Fargo was entitled to payments under the Note. Retaining smaller payments under the TPP and exercising its contractual right to foreclose after Bohnhoff refused to make payments is not unjust. Therefore, dismissal of the unjust enrichment claim is warranted.

### G. Residential Mortgage Act

Bohnhoff next argues that Wells Fargo violated the Minnesota Residential Mortgage Act. See Minn. Stat. § 58.13, subdiv. 1(a)(9), (19). Minnesota Statutes § 58.18 provides that "[a] borrower injured by a violation of the standards, duties, prohibitions, or requirements of section[] 58.13 ... shall have a private right of action." Minn. Stat. § 58.18, subdiv. 1. In response, Wells Fargo argues that National Bank Act preempts the Minnesota Residential Mortgage Act.

---

[6] The court also notes that Bohnhoff's promissory estoppel claim is barred by § 513.33 and the statue of frauds. See Tharaldson, 2011 WL 6957555, at *4.

The National Bank Act is one of only three "classes of cases" where the Supreme Court has found complete preemption. See Firstcom, Inc. v. Qwest Corp., 555 F.3d 669, 677 n.6 (8th Cir. 2009). The National Bank Act authorizes the Office of the Comptroller (OCC) to "prescribe rules and regulations" that have the same preemptive effect as federal statutes. 12 U.S.C. § 93a; see Fidelity Fed. Sav. & Loan Ass'n v. de la Cuestra, 458 U.S. 141, 153 (1982).

Under OCC regulations, "state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized real estate lending powers do not apply to national banks." 12 C.F.R. § 34.4(a). "Specifically, a national bank may make real estate loans ..., without regard to state law limitations concerning ... [d]isclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents ...." Id. § 34.4(a)(9). The Minnesota Residential Mortgage Act regulates what a lender may represent "in connection with a residential loan transaction." Minn. Stat. § 58.13, subdiv. (9), (18). Therefore, Bohnhoff's claim is preempted, and dismissal is warranted.[7]

---

[7] The Minnesota Residential Mortgage Act applies to entities "acting as a residential originator or servicer." Minn. Stat. (continued...)

14

**H.   Declaratory and Injunctive Relief**

Bohnhoff seeks a declaration that she performed her obligations and that Wells Fargo must modify the Note. Bohnhoff also seeks an order enjoining foreclosure proceedings. The court has already determined that Bohnhoff did not perform her payment obligation. The court further determined that Bohnhoff did not plead any basis for relief. As a result, declaratory judgment is not warranted. Because the court dismisses the complaint, the request for injunctive relief is moot.

**IV.   Leave to Amend**

Under the Federal Rules of Civil Procedure, "leave [to amend] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). In other words, the court should grant leave to amend, unless doing so would result in "undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice." Sanders v. Clemco Indus., 823 F.2d 214, 216 (8th Cir. 1987) (citation omitted).

Under Local Rule 15.1, "[a] party who moves to amend a pleading shall file such motion and shall attach to the motion: (1) a copy of the proposed amended pleading, and (2) a redline comparing the proposed amended pleading to the party's operative

---

⁷(...continued)
§ 58.13, subdiv. 1(a). Thus, the statute is not a state law of general applicability that "only incidentally affects the exercise of national banks' real estate lending powers." 12 C.F.R. § 34.4(b).

pleading." Such a motion must be made fourteen days in advance of a hearing. See D. Minn. L.R. 7.1(a). Where, as here, the plaintiff has not filed a motion to amend or a redlined complaint, the motion is not properly before the court. See O'Neil v. Simplicity, Inc., 574 F.3d 501, 505 (8th Cir. 2009) (citation omitted). Moreover, all of Bohnhoff's claims rely on a faulty interpretation of the TPP, and leave to amend would be futile. Therefore, the court denies plaintiff's request for leave to amend.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the motion to dismiss [ECF No. 7] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  April 3, 2012

                                        s/David S. Doty
                                        David S. Doty, Judge
                                        United States District Court